(No. 1731— )

ROBERT C. WILSON AND G. B. RICHARDSON, CO-PARTNERS, DOING BUSINESS UNDER THE STYLE NAME OF MIDWEST CONSTRUCTION COMPANY, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 14, 1937.*

BARRETT, BARRETT & WERMUTH, for claimants.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

The complaint herein recites that in September, 1927 respondent gave notice that it would receive proposals and bids for the construction of certain sections of highway known as Section 123-B of Route No. 122 in Mason County, District No. 6, being one R. C. slab bridge and two R. C. sub-structures for a bridge to be constructed in accordance with the requirements of the standard specifications for road and bridge construction, and according to plans on file in the office of the Division of Highways, Springfield, Illinois; that claimant obtained the plans for the construction of said bridges and in reliance thereon filed their proposal and bid for the work on said three bridge jobs for a consideration of Twenty One Thousand Fifty Four and 18/100 ($21,054.18) Dollars; that such bid was accepted and claimants entered upon the construction of said work, but that due to the existence of quick sand which was not disclosed in the notice of letting and due further to a variance between the actual elevation of the bed of the stream and the elevation set out in the plans, claimants allege they were misled in submitting the proposal and bid and that they incurred an increased expense in the performance of the contract, amounting to Thirty Five thousand Six Hundred Thirty Six and 03/100 ($35,636.03) Dollars, for which they now seek an award.

Both Robert C. Wilson and G. B. Richardson, who constitute the co-partnership now seeking this award, are former employees of the State Highway Department of the State of Illinois. Mr. Wilson was an Assistant Highway Engineer for more than a period of five years prior to May 1, 1927. Mr. Richardson was employed in the Division of Highways of the State for four years, and at the time he left the employ of the State was District Engineer of Designs, and prior to that time was Division Engineer on Construction.

Plaintiffs complain that they were misled in bidding on the bridge work in question, because the State did not disclose to them in its original notice to the contractors that quicksand might be encountered in the construction work in ques-

tion, and that the Highway Department had knowledge of such condition at the time of the acceptance of proposals for such work. The record discloses that the Highway Department did possess some information in regard to the character of the soil at the proposed bridge locations, and that such information was available to anyone who desired to submit a bid for the work to be done. Claimants' Exhibit 3, being its proposal for the work in question in Section 6 on page 4 recites that, "He (the bidder) has carefully examined the location of the proposed work, the plans, specifications, etc., etc." In Section 8 of the proposal it is stated that, "The undersigned declares that he understands that the quantities are approximate only and that they are subject to increase or decrease, etc." In the standard specifications for road and bridge construction, being a part of Claimant's Exhibit 3, it is stated in Paragraph 1, page 5, "The bidder should make a careful examination of the site of the proposed work, the proposal, plans, specifications and contract form before submitting a proposal. He should fully inform himself as to the quality and quantity of materials required and the character of the work, and he should further investigate the location and make a careful examination of the source of supply for materials. The bidder will be held responsible for his failure or neglect to observe or comply with these instructions." It is further stated, in Paragraph 2, "The Department does not guarantee that the estimated quantities given shall obtain strictly. * * *." In Section 3, "The proposal will state any special provisions or requirements which vary from or which are not contained in these specifications." Under Section 38 of General Provisions of the Standard Specifications, it is stated, "The contractor shall receive and accept the compensation herein provided in full payment for furnishing all materials, labor, tools and equipment; for performing all work contemplated and embraced under the contract; for all loss or damage arising out of the nature of the work or from the action of the elements; for any unforeseen difficulties or obstructions which may arise or be encountered during the prosecution of the work * * *; for all risks of every description connected with the prosecution of the work." It is further stated in Section 41 of such General Provisions, "The acceptance by the contractor of the last payment shall operate as

and shall be a release to the Department from all claims or liability under this contract for anything done or furnished or relating to the work under this contract, or for any act or neglect of said Department relating to or connected with this contract.''

From the testimony it appears that soon after claimants began the construction work in question they encountered quicksand. They first began the use of wood-sheeting for the construction of coffer-dams, and later were compelled to abandon same and to construct a steel-sheet piling coffer-dam. A substantial loss of time in the construction work resulted from this, but Lewis A. Lush, one of the State Engineers, testified that he had a conversation with claimant Wilson in November, 1927 at the site of the East bridge when the excavation work was first begun. He states that the contractors were then excavating with teams and that the coffer-dam material was not yet on the job; that he at that time informed Mr. Wilson they would probably encounter quicksand; that notwithstanding this knowledge, claimants attempted to use wooden coffer-dams and did not abandon their efforts to use such material until between the 16th and 23rd of February, 1928. Both the claimants, as above stated, had been employed in the Highway Department of the State for a number of years. There is no apparent reason why they could not have obtained all the information they may have desired, as to the nature and character of the work for which they proposed to bid. The proposal and specifications attached made it their duty to inform themselves as to such details, if they desired to bid on the job.

The evidence is conflicting as to the variance between the specifications and the actual construction work required, with reference to the elevation of the bed of the stream. Claimants contend that after they arrived on the job they learned that the Drainage District contemplated lowering the existing bed of the stream grades approximately four (4) feet at the points of the bridges, but that this work had not been completed; that claimants were not required to remove additional excavation from the stream bed itself; but that they were required to remove additional excavation in order to go to the required depth for the bridge abutments, (Record p. 37.)

W. L. Esmond, an Assistant Engineer for the State Highway Department, testified that he was one of the Engineers assigned to the supervision of the construction of the three bridges in question, and was in regular attendance at the location of same; that a revision was made in the plans and specifications after the Mid-West Construction Company began its work, and that by such revision, the footings for abutments on the East bridge were raised about one and one-half (1½) feet; that no material change was made on the plans for the middle bridge and that the plans were changed on the west bridge so as to raise the depth of the footings approximately two (2) feet. He further testified "that the practical effect of this change lessened the amount of excavation which the Bridge Company was required to do the approximate distance of the change in footage shown by the revised plan, and that insofar as the decrease in excavation required was concerned, such change was beneficial to the Company."

It further appears from the evidence that claimants bid for the construction of the three bridges in question, which was accepted by the State, amounting to Twenty One Thousand Fifty Four and 18/100 ($21,054.18) Dollars. Claimant Wilson testified that they had received from the State Twenty Four Thousand Five Hundred Forty Four and 30/100 ($24,544.30) Dollars, and that the additional amount was paid to them for the reason that under special provisions of their contract there was a clause which stipulated they should perform additional work; that additional work was performed which raised their figures from Twenty One Thousand Fifty Four and 18/100 ($21,054.18) Dollars to Twenty Four Thousand Five Hundred Forty Four and 30/100 ($24,544.30) Dollars, and that they had received the latter sum in full from the State. This witness further testified that they had received from the State all that their bid called for, plus additional work to the amount of approximately Three Thousand ($3,000.00) Dollars, and that their claim herein is based entirely on the extra cost of construction work made necessary by the unusual ground condition at the location of these bridges. (Record p. 40.)

Nothing appears in the record to indicate any acceptance under protest by claimants of the final payment that was made to them under this contract.

As hereinabove indicated, the standard specifications under which this work was undertaken provides,

"The acceptance by the contractor of the last payment shall operate as and shall be a release to the department from all claims or liability under this contract for anything done or furnished or relating to the work under this contract."

*Art. 9.7 (p. 36) Standard Specifications.*

The record fails to disclose a meritorious right in favor of claimants for an award. While they may have encountered unfortunate conditions and delays that resulted in a financial loss to them, there is no basis shown to justify the State in compensating them for their lack of information or error in judgment. They have received the amount of their bid, plus approximately Three Thousand ($3,000.00) Dollars additional for certain extras, the nature of which is not disclosed in the record, and their acceptance thereof is final so far as any rights herein are disclosed. An award is denied and the claim dismissed.